OPINION OF THE COURT
Anne G. Feldman, J.
Defendant was charged with two counts each of murder in the first degree, murder in the second degree and burglary in *796 the first degree, three counts of burglary in the second degree and one count each of criminal possession of a weapon in the second and third degrees. Defendant, who asserted a defense of extreme emotional disturbance to the murder charges, moved to waive his right to a trial by jury. The prosecution, having elected not to seek the death penalty, consented to defendant’s application.
The court questioned defendant and found that his waiver, executed in open court pursuant to CPL 320.10 (2), was voluntary, knowing and intelligent. Accordingly, because defendant no longer faced the death penalty, the court approved and accepted defendant’s waiver.
This decision explains the court’s rationale for permitting the waiver.
Prior to 1938 it was constitutionally impermissible for any criminal defendant to relinquish the right to trial by jury. However, effective in 1938, article I, § 2 of the New York Constitution was amended to provide that "[a] jury trial may be waived by the defendant in all criminal cases, except those in which the crime charged may be punishable by death.”* When the present Criminal Procedure Law was enacted in 1970 (L 1970, ch 996), CPL 320.10 (1) provided in accordance with article I, § 2 that a defendant had an absolute right to a non-jury trial "[ejxcept where the indictment charges a crime for which a sentence of death may be imposed upon conviction”. Subsequently, in 1974 with the enactment of Penal Law § 60.06 wherein a sentence of death was made mandatory for a murder in the first degree conviction (see, L 1974, ch 367, § 2), the Legislature amended CPL 320.10 (1) to provide for jury waiver "[ejxcept where the indictment charges the crime of murder in the first degree” (see, L 1974, ch 367, § 15).
The language of the constitutional provision prohibiting jury waiver where "the crime charged may be punishable by death” (NY Const, art I, § 2) and the statutory provision allowing *797 waiver "[ejxcept where the indictment charges the crime of murder in the first degree” (CPL 320.10 [1]) cannot be reconciled when viewed in the context of the recently enacted Capital Offenders Law. The court must therefore look to the legislative intent to resolve this conflict and "ascertain and give effect to the intention of the Legislature.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 92.) "As a general rule, the legislative intent with which statutes are enacted is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and from the objective and remedy in view.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 95, at 196.) The court must not "merely read the bare end product of the legislative labors, but rather * * * read the statute in light of the state of facts which were found by the Legislature and which prompted the enactment.” (Id., at 197.)
In explaining the constitutional amendment to article I, § 2 and its apparent expansion of the prohibition against jury waiver, the Bill of Rights Subcommittee of the 1938 Constitutional Convention noted "that the Constitution will still not permit this choice to a defendant in a capital case and regards such a prohibition against waiver as a measure for the protection of the defendant.” (1938 NY Constitutional Convention Comm, Problems Relating to Bill of Rights and General Welfare, at 14 [emphasis supplied].) This declaration reflected the historical view that the jury acted as a buffer between the individual and the power or tyranny of the State. In a "capital case”, which in its plain meaning is a case involving a crime punishable by death, the fate of a defendant facing the ultimate, irrevocable punishment of death could not be left in the hands of an individual governmental officer. A jury of ordinary people with its common sense and freedom from "precedent” was considered to be better suited to the task of determining the facts and judging the credibility of witnesses than a single Judge with "technical training and habit of mind” (id., at 7).
There is no written legislative history concerning the 1974 amendment to CPL 320.10. However, the legislative intent is clear. The language that specifically prohibited waiver "where the indictment charges the crime of murder in the first degree” was incorporated into the statute during the same legislative session which enacted Penal Law § 60.06 mandating death as the only available sentence for a conviction of murder in the first degree. At that time, since death was mandatory and first *798 degree murder was the only capital crime, the narrowing of CPL 320.10 (1) was logical and consistent with article I, § 2. The Legislature in amending CPL 320.10 (1) was simply coordinating it with the mandatory sentence requirement in Penal Law § 60.06 (see, L 1974, ch 367).
With the 1995 reinstitution of capital punishment in this State (L 1995, ch 1), the Legislature carved wholesale changes into the statutory landscape. Among the statutes amended was Penal Law § 60.06 which no longer mandated death as the exclusive penalty for a conviction of murder in the first degree. Instead the District Attorney has the option of determining whether the death penalty will be sought for a murder in the first degree indictment. No corresponding change in CPL 320.10 was enacted.
As noted, under the present statute all cases charging murder in the first degree are not necessarily capital cases at trial (see, CPL 250.40). Rather, the prosecution must make that decision within 120 days of defendant’s arraignment on a charge of murder in the first degree (CPL 250.40 [2]). A decision not to seek the death penalty is irrevocable (CPL 250.40 [4]). Thus, while a defendant remains exposed to conviction on murder in the first degree charge he now faces a maximum sentence of life imprisonment without parole rather than death.
Absent exposure to the potential penalty of death the case against a defendant is no longer capital in nature. For instance, a defendant’s eligibility for Capital Defender’s Office representation pursuant to Judiciary Law § 35-b ends because he is no longer involved in a criminal action "in which a death sentence may be imposed”. Thus, the defendant no longer needs the constitutional protection provided by article I, § 2 and should be permitted to waive a jury.
In 1987 the Appellate Division, Fourth Department, in People v Swan (130 AD2d 6), reached the same conclusion under somewhat different circumstances. The defendant there had executed a written waiver of jury trial which the Trial Judge summarily disapproved. Noting that the Court of Appeals in 1977 had held the death penalty statute unconstitutional (People v Davis, 43 NY2d 17), the Appellate Division reversed the trial court’s decision holding that defendant had been summarily deprived of his constitutional right to waive a jury trial.
In reaching this decision the court held that article I, § 2 provides a defendant with a constitutional right to waive trial by jury except where the crime charged may be punishable by *799 death. (People v Swan, supra, at 8.) Since, under Davis (supra), the defendant could not be subjected to the death penalty upon conviction of any of the crimes charged, he was entitled to waive a jury notwithstanding the language in CPL 320.10 (1).
In the instant case since the prosecution has irrevocably decided not to seek that punishment, it is also impossible^ for defendant to be subjected to the death penalty.
It seems clear that the Legislature’s failure to amend CPL 320.10 (1) when it reinstituted capital punishment in our State was inadvertent. Because it is no longer logical or consistent with constitutional protections afforded defendant or with the rest of the statutory scheme it cannot be read as precluding a defendant’s right to waive a jury trial where the prosecution has elected not to seek capital punishment.
Accordingly, defendant’s motion is granted.

 In 1938, murder in the first degree, kidnapping and treason were capital crimes. The first degree murder statute encompassed "deliberate and. premeditated” killings, "depraved mind” and felony murders and intentional homicides committed in the course of arsons or train wrecks (former Penal Law § 1044 [l]-[4]). The capital punishment provisions of the kidnapping statute and the depraved mind and felony murder variations of first degree murder were discretionary. Specifically, regarding depraved and felony murder "[a] jury * * * may, as a part of its verdict, recommend that the defendant be imprisoned for the term of his natural life.” (L 1937, ch 67, § 2, former Penal Law § 1045-a.) All other forms of first degree murder as well as treason carried a mandatory death sentence.